## 24411. WHATLEY *v.* THE STATE.

DECIDED MARCH 26, 1935.

*A. L. Miller,* for plaintiff in error.
*Robert B. Short, solicitor-general,* contra.

MACINTYRE, J. The only assignment of error was on the general grounds of the motion for a new trial. The evidence was in part: "I was standing in front of the café, and Joe [defendant] drove up in his car and asked me to bring him a sandwich, and I brought him the sandwich, and then he said he was going inside, and I told him not to go in. His father had asked me to tell Joe to go home. I thought he was intoxicated. I smelled something on him that smelled like liquor. He went in the café and ordered him something to eat and sat up by the counter. John Davis was sitting by him and they got to talking. I couldn't hear what all they said, and Joe took a glass of water and shoved it down the counter and knocked off some dishes and they broke. Then some-

body called the policeman, Mr. Harrison, and he came down there, and Joe told him not to come in there. And then Joe come out and got in the car, and I rode up Hartford street with him a piece and then got out. He appeared to me to be intoxicated. He came up Hartford street driving his car. . . After somebody called a policeman, I heard him [defendant] cuss and say that he was not a going to let the policeman arrest him, . . and backed up in the corner. . . I smelled whisky when he was standing there on the sidewalk. . . Mr. Joe Whatley [the defendant] and his family went over to Alabama that day and I went with them in the car. We drank some whisky in Alabama; we had a half gallon of whisky and the last whisky I saw Mr. Whatley drink was in Alabama. I got hurt on the way home. We were coming up a hill and my hat blew off and I was in the back of the truck and told Mr. Whatley to stop, because my hat was blowed off, and when I jumped out to get my hat he stopped the truck and backed back to get the hat, and backed against me and knocked two of my ribs loose. I took another drink."

The alleged crime was after dark on the day the defendant went to Alabama, after his return to Edison, Georgia. The defendant's statement in part was that "at the time that they are talking about that I was in the café and threw the glass of water, I was not drunk. I had a drink in Alabama about the middle of the afternoon but only a small drink. . . He [the witness who had his ribs broken] asked me to stop and back down there and get his hat. I started to backing the car, and he either jumped out or fell out, and the car struck him and hurt him. I stopped the car; got out and picked him up and put him back on the car and brought him on to the doctor. . . After the doctor had dressed his side and broken ribs, I took him home and put him to bed and asked if there was anything else I could do for him. I then went to the café, and . . Loraine, that is my brother's wife, doesn't like me anyway, and she brought me a sandwich and the water and wouldn't put any ice in it, and I tried to get her to put some ice in it, and she wouldn't do it, and they all got to laughing about it in the café because I couldn't get any ice to put in my water, and I got mad and threw the glass of water down the counter and knocked a dish off and broke it. I paid her for the dish, and somebody called Clem Harrison [policeman], and I told them I wasn't

going to let Harrison arrest me, for I had not done anything to be arrested for, and that Loraine Whatley was the cause of the whole trouble on account of the way she treated me. I went on out there on the front and told Clem Harrison [policeman] about it, and he said, 'Go on home.' It didn't amount to anything, and I went on home. I didn't hurt anybody and didn't do anything to anybody, and if Loraine hadn't treated me like she did, I wouldn't have got mad. I wasn't drunk and I wasn't drinking and I was as sober then as I am right now."

The mere fact that the defendant did not stagger but walked straight is one of the facts or circumstances which might tend to show that the defendant was not drunk, but there being other testimony, which, if believed by the jury, would establish the fact that the defendant was drunk, the jury would be authorized to so find, notwithstanding the fact that all of the witnesses testified that the defendant did not stagger. The fact that only one witness testified "he smelled something on him [defendant] that smelled like liquor," while the other witnesses testified that they didn't smell any liquor on him, of course made this feature of the case a jury question. The jury having found the defendant guilty and the trial judge having overruled the motion for a new trial, we do not feel authorized, under the evidence, to say that the judge erred.

*Judgment affirmed. Broyles, C. J., and Guerry, J., concur.*